UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 11-10212-JLT

UNITED STATES OF AMERICA

v.

BRANT WELTY and BRIDGET WELTY

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO SUPPRESS

February 26, 2013

STEARNS, D.J.

Defendants Brant Welty and Bridget Welty have separately moved to suppress evidence gathered under the authority of wiretap orders entered by judges of this court. The motions are substantially identical and rest on the same core allegation: that the government's wiretap applications failed to establish that electronic surveillance was necessary, as required by 18 U.S.C. § 2518(1)(c).

BACKGROUND

Brant and Bridget Welty are charged with conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846, and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). These prosecutions grew out of a FBI investigation initially focused on the suspected operation of brothels by Wei Xing Chen. On October 7, 2010, the government received authorization to intercept wire

communications over a telephone used by Chen.  In an affidavit supporting the wiretap application, FBI Special Agent Timothy McElroy attested that probable cause existed to believe that the target subjects – including John Willis, a lead defendant in this case – were involved in a conspiracy to distribute controlled substances, illegal gambling business, prostitution, extortion, and racketeering.

Between October 7, 2010, and March 31, 2011, wiretap applications on nine telephones were approved.  Of the targeted phones, three were used primarily by Willis and one by Brant.  Each application was supported by an extensive affidavit admitted by Agent McElroy.  Pertinent to the motions at issue here, Agent McElroy detailed Willis's and Brant's involvement in drug transactions with associates of Chen – and in Willis's case, other criminal activity with Chen himself.

Bridget and Brant now bring separate motions to suppress evidence produced by all wiretaps subsequent to the initial surveillance authorized on Chen.[1]  Their motions allege only one ground for suppression of the wiretap evidence: that the government failed to satisfy the necessity requirement of 18 U.S.C. § 2518(1)(c). This contention rests on two independent grounds.  First, necessity for the challenged

---

[1] Bridget moves to suppress all communications from wiretaps authorized on or after December 30, 2010 and Brant moves to suppress wiretap evidence from target telephones two (authorized on November 24, 2010) through eight.  The distinction makes no difference to the outcome.

2

wiretaps was lacking because the government "improperly bootstrapped necessity from a previous, unrelated investigation" into an investigation of Willis and the Weltys. Second, even if the Chen and Willis conspiracies are not independent of one another, the government had failed to demonstrate that normal investigatory techniques could not have been used.

## DISCUSSION

Title III contains what is known as a "necessity requirement," mandating that a wiretap application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Even if probable cause is established, if the necessity requirement is not met, evidence gathered from the wiretap may not be used at trial. 18 U.S.C. § 2515. To satisfy this requirement, "the government must demonstrate that it has made 'a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls.'" *United States v. Lopez*, 300 F.3d 46, 52 (1st Cir. 2002), quoting *United States v. Hoffman*, 832 F.2d 1299, 1306 (1st Cir. 1987). However, "the necessity requirement is not tantamount to an exhaustion requirement." *Id.* The government need not "run outlandish risks or [ ] exhaust every conceivable alternative before seeking a wiretap." *Hoffman*, 832 F.2d

at 1306; *see also United States v. Villarman-Oviedo*, 325 F.3d 1, 9 (1st Cir. 2003) (government need not show that other methods have been entirely unsuccessful).

A court considering a motion to suppress evidence collected by a wiretap based on the sufficiency of the application "examines the face of the affidavit and 'decide[s] if the facts set forth in the application were minimally adequate to support the determination that was made.'" *Villarman-Oviedo*, 325 F.3d at 9, quoting *United States v. Ashley*, 876 F.2d 1069, 1074 (1st Cir. 1989) (alterations in original). "The determination of necessity is properly committed to the issuing judge in the first instance, and [a reviewing court] will uphold the sufficiency of the affidavit wherever 'the issuing court could have reasonably concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed.'" *United States v. Yeje-Cabrera*, 430 F.3d 1, 8 (1st Cir. 2005), quoting *Lopez*, 300 F.3d at 53.

Here, the Weltys' primary contention is that section 2518(1)(c) was not met because the government improperly "bootstrapped" the requisite showing of necessity from its initial investigation of Chen into the wiretap applications for the telephones belonging to Willis and Brant. On this theory, the alleged criminal activity of the "Asian gang" led by Chen was independent of the alleged oxycodone conspiracy between Willis and the Weltys, and thus the government had undertaken two separate, unrelated investigations that were then folded into one. There are two weaknesses to

at 1306; *see also United States v. Villarman-Oviedo*, 325 F.3d 1, 9 (1st Cir. 2003) (government need not show that other methods have been entirely unsuccessful).

A court considering a motion to suppress evidence collected by a wiretap based on the sufficiency of the application "examines the face of the affidavit and 'decide[s] if the facts set forth in the application were minimally adequate to support the determination that was made.'" *Villarman-Oviedo*, 325 F.3d at 9, quoting *United States v. Ashley*, 876 F.2d 1069, 1074 (1st Cir. 1989) (alterations in original). "The determination of necessity is properly committed to the issuing judge in the first instance, and [a reviewing court] will uphold the sufficiency of the affidavit wherever 'the issuing court could have reasonably concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed.'" *United States v. Yeje-Cabrera*, 430 F.3d 1, 8 (1st Cir. 2005), quoting *Lopez*, 300 F.3d at 53.

Here, the Weltys' primary contention is that section 2518(1)(c) was not met because the government improperly "bootstrapped" the requisite showing of necessity from its initial investigation of Chen into the wiretap applications for the telephones belonging to Willis and Brant. On this theory, the alleged criminal activity of the "Asian gang" led by Chen was independent of the alleged oxycodone conspiracy between Willis and the Weltys, and thus the government had undertaken two separate, unrelated investigations that were then folded into one. There are two weaknesses to

this argument. First, as to the facts, defendants slice the salami too thin. As evidence of conspiratorial autonomy, Brant relies on the "conspicuous[] absen[ce]" of any allegation that Willis supplied Chen or his associates with oxycodone or other drugs. Brant Welty Br. at 5, 10. The McElroy affidavits, however, cite numerous instances of interactions between Brant Welty and associates of Chen (who were named as targets in the initial wiretap application) that appeared to be in furtherance of the alleged drug conspiracy. Moreover, Willis was one of the primary targets of the initial wiretap application, which, in part, was submitted to facilitate an investigation of suspected narcotics trafficking.[2] The very premise of the "separate conspiracies" argument – that there was no interaction between the criminal activities of Chen and Willis – is belied by the facts presented in the McElroy affidavits.

Second, the Weltys' "bootstrapping" argument obfuscates the showing needed to satisfy the necessity requirement as a matter of law. Bridget Welty cites *United States v. Santora*, 600 F.2d 1317, 1322 (9th Cir. 1979), for the proposition that "agents must use normal investigative techniques to investigate *each alleged conspirator separately*." Bridget Welty Br. at 6 (emphasis added). But this interpretation states

---

[2] Count One of the initial indictment charged Willis and the Weltys with a drug-trafficking conspiracy that included marijuana. The superseding indictments have narrowed the Count One conspiracy to distribute oxycodone, but the Count Two money laundering charge includes all drug trafficking proceeds, including those derived from the sale of marijuana.

a non-existent rule. As a court in this jurisdiction has explained, the Ninth Circuit in *Santora* held that a second wiretap application targeting persons whose conversations had been overheard on the original wiretap fell short of the necessity requirement because "the government [had] relied almost exclusively on statements in its initial application that normal investigative techniques had failed. . . . [T]here was no independent analysis of the utility of conventional investigative techniques as to those individuals whose phones were tapped pursuant to the second application." *United States v. Gambale*, 610 F. Supp. 1515, 1541 (D. Mass. 1985). *Santora* does not go so far as to require a showing of necessity as to each and every member of a conspiracy. The additional Ninth Circuit case relied on by Brant, *United States v. Gonzalez Inc.*, 412 F.3d 1102, 1115 (9th Cir. 2005), similarly repeats the unarguable proposition that a showing of necessity made in a prior wiretap application alone is insufficient in and of itself to support a subsequent and separate application. The rule is different where the subsequent application is simply an expansion of the predecessor application. *See Gambale*, 610 F. Supp. at 1541 ("*Santora* does not stand for the proposition that a fresh showing is required each time the Government wishes to monitor the conversation of a new suspect"). Here, the government did not simply copy its necessity showing from one application to another without conducting an independent analysis.

In the context of the investigation as a whole, the McElroy affidavits sufficiently

describe why the normal investigative techniques already deployed in the investigation – confidential informants, the attempted placement of undercover agents, physical surveillance, and analysis of telephone records and pen register results – were unlikely to yield any further successes. The affidavits also explain that serving grand jury and administrative subpoenas, interviewing targets or witnesses, or executing search warrants would alert suspects that they were under investigation and compromise the government's objective. The court is satisfied that the applications in question are more than "minimally adequate" to support the necessity findings made by the issuing judges. *See, e.g.*, *United States v. Santana*, 342 F.3d 60, 65-66 (1st Cir. 2003) (government made the appropriate necessity showing where the "affidavit stated, among other things, that physical surveillance and the use of pen register information had been employed; that no confidential informants were available to purchase drugs; that not enough information was known to seek a search warrant; and that garbage searches were not possible."); *United States v. Bannerman*, 2005 WL 2323172, at *2 (D. Mass. Aug. 25, 2005) (necessity shown where DEA agent "offered credible, fact-specific, and detailed explanations regarding the unlikelihood of approaches that had already been utilized in the course of the investigation" and explained "why various other investigative tools (*e.g.*, grand jury subpoenas and interviews of potential witnesses) would [ ] thwart the investigation.").

Finally, contrary to the Weltys' claim that the necessity showing for tapping Willis's phones was "bootstrapped" from the investigation into "Asian gangs," the affidavits – including the November 24, 2010 affidavit supporting the initial wiretap of Willis's phone – describe the particular challenges of normal investigatory methods posed by Willis's behavior.  Among these challenges was the difficulty of physical surveillance of Willis, who drove fast cars registered to others, did not live at a fixed location, frequented crowded areas such as Boston's Chinatown, and conducted some of his alleged criminal activity in Cantonese.  Furthermore, the March affidavit alleges a multitude of facts indicating that Willis (along with Brant) had become highly suspicious of law enforcement, making ordinary means of surveillance even more impractical. *See Lopez*, 300 F.3d at 53 (specific incidents suggesting that conspirator suspected surveillance rendered normal investigative techniques inadequate because "use of surveillance and undercover operations risked revealing the investigation and placing law enforcement officers in harm's way").

ORDER

For the reasons set forth above, the motions of defendants Brant and Bridget Welty to suppress the wiretap evidence are <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE